[*General Term, April*, 1873.]

## CHARLOTTE L. JONES *v.* JOHN GERKE, TREASURER OF HAMILTON COUNTY.

The Superior Court of Cincinnati has no jurisdiction to restrain the assessment or collection of an illegal tax or assessment upon lands lying outside the limits of the city of Cincinnati.

Where a suit was brought against the treasurer of the county, whose office is by law established in the city of Cincinnati, at the court-house, to restrain him from collecting an illegal assessment for the improvement of a street in an incorporated village in the county, and the treasurer demurs to the petition on the ground of a want of jurisdiction in the court, and also because the same does not state facts sufficient to constitute a cause of action, claiming that injunction is not an authorized remedy, and such village is afterward, during the pendency of the demurrer, annexed to the city, and the defendant then appears in court, and argues and submits his demurrer upon both his alleged grounds, it is equivalent to his appearing to a new action brought after annexation, and the court acquires full jurisdiction.

The collection of such illegal assessment by the county treasurer may be restrained by injunction.

*Healy*, for plaintiff.

*Forrest & Lindemann*, for defendant.

YAPLE, J.   This cause is before us upon demurrer to the plaintiff's petition, reserved from Special Term.

The plaintiff seeks to enjoin the collection, by the defendant, of a special assessment, with penalty for non-payment, upon a lot of hers in the village of Cumminsville, for the improvement of a street, which assessment was, in the form required by statute, certified to the county auditor, and from thence placed upon the treasurer's books, to be collected as other taxes.   The averments of the petition, if true (and the demurrer admits their truth), show the assessment to be unauthorized and invalid.

Suit was brought on the 20th day of December, 1872, and the demurrer was filed the next day.   This was before

Cumminsville was annexed to the city of Cincinnati, which it has since been.

The demurrer is based upon two grounds:

1. That the Superior Court of Cincinnati has no jurisdiction of the subject of the action, to wit, to restrain the county treasurer from the collection of a·special tax or assessment illegally levied upon lands in Hamilton county, outside the city of Cincinnati; and,

2. That the petition does not state facts sufficient to constitute a cause of action against the treasurer, because the plaintiff has a plain, adequate, and complete remedy without the aid of a court of equity, through the interposition of the extraordinary remedy of injunction.

As to the first question, we are all of opinion that the Superior Court of Cincinnati has no jurisdiction to restrain the collection of taxes or assessments illegally levied upon real estate without the corporate limits of the city; that the act creating the court and defining its jurisdiction·(1 S. & C. 388, etc.) properly construed, excludes the exercise of such jurisdiction. And we are satisfied, also, that the act of April 10, 1856 (2 S. & C. 1151, 1152), which authorizes the illegal assessment and collection of·taxes to be prevented by injunction, does not authorize this court to exercise jurisdiction, in cases like the present, though the second section of the act provides, " that actions to enjoin the collection of taxes shall be brought against the officer having the collection thereof," and though the above-mentioned act creating this court provides, that it shall have jurisdiction in every other action where the defendant resides, " or may be summoned in the city of Cincinnati;" and even though all the personal acts of such officer toward enforcing the collection of such illegal tax, will be done within the city, to wit, at the court-house of the county.

The local *situs* of the lot controls. For judicial purposes, so far as this court is concerned, Hamilton county is divided into two parts—the city of Cincinnati, to which its terri-

torial jurisdiction is limited, and the residue of the county, over the real property in which it has no more jurisdiction, save in specially enumerated cases, than it has over real estate in other counties of the state.    To such subdivision, title 4, sections 45 to 54, of the code, applies by clear analogy, as if the city were made a county as to the Superior Court; and it can not be claimed that any court in this county, by getting service of a summons upon a treasurer of another county here, could restrain him from collecting a tax illegally levied upon lands in his county.    Yet, such would follow, if this court, by obtaining service upon the treasurer of this county within the city, could restrain him from collecting taxes levied upon lands lying beyond the city limits.    The law establishes the treasurer's office for the entire county at the court-house in this city, and the city can not avail itself of such location for the mere purpose of acquiring jurisdiction, when, if the office were required to be kept elsewhere in the county, no such service or jurisdiction would be obtainable.

But, how stood the case when this demurrer was argued before us, on April 22, 1873, and how does it stand now, Cumminsville being annexed to the city.   Prior to that time, the court had no jurisdiction to determine whether the petition stated facts sufficient to constitute a cause of action against the treasurer or not; and previous to the annexation the consent of the defendant could not have conferred upon the court such jurisdiction; for the difficulty was, the court could not have jurisdiction of the subject matter of the action.    When Cumminsville, however, was annexed to, and became parts of the city of Cincinnati, the Superior Court became capable of receiving such jurisdiction ?   Had this action not been brought till then, this court, after due service had upon the defendant, would have full jurisdiction in the premises.    Such service of summons may be waived; the defendant may voluntarily appear and litigate the case. . He does so.   He comes into court and asks the court whether the petition, upon the merits, makes any

case for relief against him. This we can not determine without we have jurisdiction both of the person of the defendant and of the subject matter of the action. We acquire both when he begins to litigate the cause upon its merits. It is the same, in effect, as if a new suit had been brought since such annexation, and the party had voluntarily appeared in court to defend it. Hence, we have now jurisdiction, and can determine, as we do, the question secondly raised by the defendant, whether, as the plaintiff has a legal remedy, she is entitled to restrain the collection of this assessment, as she seeks to do, *by injunction.* We answer this question in the affirmative. The collection, etc., of *special* taxes, etc., illegally assessed, could always be restrained by injunction in Ohio. *Burnett* v. *Cincinnati,* 3 Ohio, 73; *Culbertson* v. *Cincinnati,* 16 Ohio, 574; *Jonas* v. *Cincinnati,* 18 Ohio, 318. In the case of *general* taxes, the rule of law was different. *McCoy* v. *Chillicothe,* 3 Ohio, 370; *Mechanics, etc., Bank* v. *Debolt,* 1 Ohio St. 591; *Exchange Bank* v. *Hines,* 3 Ohio St. 1.

Even in the latter class of cases, courts would restrain the assessment or collection of general taxes under peculiar circumstances. *Baker* v. *Black et al.,* 6 Ohio, 53; *Matheny* v. *Golden,* 5 Ohio St. 361.

In this state of the law, the remedial statute of April 10, 1856, was passed (2 S. & C. 1151, 1152), authorizing the restraint, by injunction, of the collection of taxes illegally assessed. This statute, being remedial, is to receive a liberal construction, and it applies to all cases of the kind, in which, previously, a remedy by injunction was denied. This remedy is, in such cases, cumulative, so that it is immaterial whether other adequate legal remedies exist or not.

The demurrer is overruled.